IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNICE SELIMOS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | No. 13 C 6885<br><br>Magistrate Judge<br>Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Bernice Selimos's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Selimos's motion for summary judgment [Doc. No. 14] is granted in part and denied in part.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 19, 2010, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since November 1, 2005. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 3, 2012. Claimant personally appeared and testified at the hearing but was not represented by

counsel. Her husband, George Selimos, and vocational expert Thomas Dunleavy also testified.

On May 21, 2012, the ALJ denied Claimant's claim, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND[1]

### A. Background

Selimos was born on April 4, 1951 and was 58 years old as of December 31, 2009, her date last insured. She alleges disability due to a foot injury, shoulder injury, post-traumatic stress disorder, and depression. She had previously worked as a home health caregiver, merchandiser, and real estate agent.

In a September 2010 Function Report, Plaintiff stated that she has a difficult time walking due to her right foot; her back hurts, whether sitting or standing; she gets sore when driving for long periods of time; she has cramps in her neck and head pain; and her chores are limited due to her right shoulder pain. She is able to do simple chores such as laundry, sweeping, preparing simple meals, and feeding the dogs, and she babysits her grandchildren in their home as needed. Plaintiff could clean daily, do laundry every three days, perform household repairs with help when needed, and mow the lawn with a riding mower over the course of two weeks. However, she was no longer able to do everything she once did, including painting,

---

[1] The following facts from the parties' briefs are undisputed unless otherwise noted.

2

building things, and preparing more elaborate meals. She stated that she could walk five blocks if the pavement was straight, but it depends on how her feet feel. Selimos reported difficulty handling stress and changes in routine.

In another Function Report, completed in January 2011, Selimos stated that she could not drive for more than fifteen or twenty minutes due to foot pain, she cannot walk more than five minutes or stand for very long, and her knees "want[ ] to buckle in especially the right foot." (R. 243.) She experiences pain in her neck and arm when she tries to lift anything. Pain keeps her up a few hours a night. She stated that she could visit with her grandchildren, do light vacuuming, and feed the dogs, but she could no longer mow anything other than sections of the lawn, because it takes her three days. She claimed that it takes longer to do anything. Selimos states that she is more withdrawn than before the accident, takes medication for depression, worries a lot, and does not handle stress well.

### B. Medical Evidence

Plaintiff was injured in an auto accident on September 13, 2005. The emergency room records state that she suffered trauma to the right side of her face, her right chest was swollen, and she had a large hematoma and significant swelling in her upper arm. Her thoracic and lumbar spine were not tender. Plaintiff complained of pain in both feet, but no deformity or soft tissue swelling was noted. CT scans of the head, cervical spine, chest, pelvis, and abdomen were all negative. X-rays, including of the feet, were negative. A CT scan of her brain revealed no evidence of bleeding or acute changes, but a small hypodensity in the left frontal

parietal junction area was identified. The physician reviewing the scan believed it to be "due to a tiny old ischemic infarct." (R. 441.)

1. **<u>Right Foot Injury</u>**

A three-view x-ray of Selimos's right foot was taken on September 26, 2005. It showed a cortical fracture involving the base of the second metatarsal. A handwritten note states that no cast was necessary, but Plaintiff was advised to wear shoes with good support. A follow-up CT scan on October 19 showed fractures at the bases of the second and third metatarsals as well as an avulsion fracture involving the first cuneiform bone. On June 28, 2007, a CT scan showed that the metatarsal fractures were healed, but the small avulsion fracture involving the medial cuneiform bone was still present, along with minimal degenerative changes.

Dr. Paul Bishop performed an open debridement of the fracture fragments and a fusion of the Lisfranc joint in her right foot on February 14, 2008. She was released from the hospital the same day. A CT performed on the foot on December 15, 2008 showed the hardware and post-fusion changes, but normal alignment, no new fracture, and no other changes from the June 2007 CT scan. The surgical hardware was removed on January 22, 2009.

On August 10, 2009, Selimos underwent an evaluative appointment with orthopedic surgeon Dr. John Stamelos, who had reviewed her medical records prior to the consultation.[2] He reported that the reason Plaintiff elected to undergo the second surgery to remove hardware was because the hardware caused her irritation

---

[2] The evaluation was apparently performed at the request of the attorney representing Selimos in her personal injury case.

and discomfort with push-off, and the surgery did resolve some of the nerve irritation. However, Selimos continued to experience pain with weightbearing in her right foot, namely a knot on her sole. Orthotics, shoes, and heel injections did not give complete relief. He stated that Plaintiff had no physical therapy on her foot.

Claimant told Dr. Stamelos that her foot would hurt after walking a few blocks, and she could drive only if she had a chance to stretch her Achilles tendon. She could not run, dance, or do any high-impact activities. He noted that there were no current plans for further treatment except for orthotics, anti-inflammatory medication, and a self-directed stretching program. Dr. Stamelos noted that after physical therapy in 2008, she showed good response and her neck pain and range of motion had improved. At the time of the evaluation, she reported that she takes ibuprofen occasionally but had not been on any sustained medication for the last year for pain from her injuries.

During the examination, Dr. Stamelos noted that Plaintiff had a full unrestricted range of motion of the cervical spine with a little tightness in the cervical muscles on the right side, and a little prominence of the AC joint on the right. Her right foot demonstrated full dorsiflexion and plantar flexion as compared with the left, but she was limited in supination of the right foot. She did have a slight steppage gait on the right foot. She showed some persistent soft tissue swelling in her right foot but had good capillary refill and vascularity. X-rays of the right foot taken by Dr. Stamelos showed the removal of the previous hardware, a complete solid fusion involving the second and third metatarsal cuneiform joints,

posttraumatic arthritis involving the base of the first metatarsal medial cuneiform with some spurring, but no other bone erosion or any osteolysis.

Dr. Stamelos concluded that Plaintiff would have persistent plantar fasciitis and heel bursitis and would continue to need orthotics on a lifelong basis, with accommodations to her shoes. She would have a permanent 25-50% reduction in the movement of her right mid foot and would be unable to run or jump. He further concluded that the posttraumatic arthritis he diagnosed from the x-rays "may become more symptomatic with walking and standing." (R. 505.) Dr. Stamelos did not believe any further surgical treatment would be needed for the right foot, but he did recommend a course of physical therapy to work on stretching her plantar fascia and to improve muscle tone around her ankle. He thought it was possible she would need an additional injection or physical therapy on her right shoulder in the future, but "at this time, there does not appear to be the need for that treatment based on my examination." (R. 506.)

Plaintiff saw Dr. Jeffrey Watkins, a podiatrist at Castle Orthopaedics & Sports Medicine ("Castle") on February 5, 2010 (after her date last insured) for foot pain. She reported that none of the treatment had helped, including arch supports, physical therapy, and cortisone injections. The pain was described as a pins and needles sensation on the bottom of her heel, which caused her to limp. Dr. Watkins recommended an MRI to determine whether Plaintiff had tarsal tunnel syndrome. The MRI, which was performed on February 16, showed findings compatible with moderate plantar fasciitis involving the proximal central band, mild to moderate

reactive cancellous edema within the heel, and post-fusion changes in the foot. No fractures or tear of the plantar fascia were noted.

Selimos underwent physical therapy for her plantar fasciitis in 2010. She had ten sessions from January 18 to February 10, 2010 and another twelve from March 16 to April 26, 2010. Physical therapy treatment notes from April 27, 2010 note bilateral heel pain and minimal hip/back pain with prolonged positioning; an antalgic gait with decreased weight bearing on heels; and a decreased range of motion in her ankles. However, her general condition was improved from her initial evaluation on January 18.

### 2. **Other Impairments**

Plaintiff underwent physical therapy for right shoulder pain in June-July 2006. She had a full range of motion in the shoulder but experienced pain at the end range. She had 5/5 strength in the shoulder, except for flexor, abductor, and extension rotation, which were graded at 4+/5. She had difficulty putting her hands at the small of her back and raising them above her head.

On July 26, 2007, Selimos reported to Dr. Suresh Velagapudi at Castle that lifting or pulling aggravated her shoulder pain. She was not currently taking any analgesic medications. Plaintiff had excellent motion related to her neck and shoulders, with tenderness corresponding to the AC joint, but no increased tenderness with cross-body adduction of the shoulder. Apprehension and impingement maneuvers were negative. X-rays performed that day showed evidence of some AC joint space narrowing, but otherwise subacromial and

7

glenohumeral joint spaces appeared normal. Dr. Velagapudi administered an injection to the AC joint, which significantly improved her symptoms. Dr. Velagapudi did not schedule a follow-up visit; he stated that he would made additional recommendations after hearing from her. Plaintiff did not return to Dr. Velagapudi's practice until February 5, 2010, after her date last insured, when she saw Dr. Watkins for foot pain.

A March 5, 2010 MRI of her lumbar spine was taken in response to Selimos's complaints of back pain and radiculopathy for the past four to five months. It revealed mild scoliosis, a small protrusion of the L4-5 intervertebral disc with annular fissuring resulting in mild left neural foraminal narrowing, and a mild annular bulge of the L1-2, L2-3, and L3-4 intervertebral discs with no central canal stenosis or nerve root compression.

On July 26, 2007, she reported taking clonazepam. Records from 2011 and 2012 show that she attended group therapy at the LaSalle VA outpatient clinic for issues related to her husband's post-traumatic stress and her own stress from her son's military service.

### 3. State Agency Consultants

On October 19, 2010, state agency physician C. A. Gotway, M.D. found that prior to Plaintiff's date last insured of December 31, 2009, there was insufficient evidence to make a substantive decision, noting in particular the lack of a medical source statement. This conclusion was upheld on reconsideration on January 21, 2011 by Dr. B. Rock Oh. He found that the impairments that were supported in the

8

record could produce some limitations in function, but not the extreme limitations suggested in Plaintiff's January 2011 function report.

### C. Testimony of Plaintiff and Plaintiff's Husband

Plaintiff testified that the car accident traumatized her, and she is afraid to drive. She also had difficulty driving as a result of her foot pain; it feels like nails are in her heel when she places it at an angle to drive. Selimos stated that the psychological trauma from the accident was compounded by the fact that two of her children were in the military and deployed. She was unable to focus or remember things due to her depression.

George Selimos, Plaintiff's husband, testified that he suffers from post-traumatic stress, and his group psychologist met with Plaintiff and the other wives biweekly. George stated that their children's deployment increased both his and his wife's mental problems. He testified that Selimos saw two therapists at the VA clinic. George also indicated that Plaintiff had trouble obtaining medical care because they no longer had medical insurance.

### D. Vocational Expert Testimony

The ALJ asked Vocational Expert ("VE") Thomas Dunleavy whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") to perform the full range of light work could perform any of Plaintiff's past work. The VE said that the person could perform Selimos's prior job as a real estate agent. The VE further testified that Selimos had no sedentary transferable skills.

9

### E. ALJ Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2005. At step two, the ALJ concluded that Claimant had severe impairments of degenerative disc disease of the lumbar spine and degenerative joint disease of the right foot and nonsevere impairments of plantar fasciitis and hypertension. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ then determined that Selimos retained the RFC to perform work at the light exertional level and could could frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, crawl, and reach in all directions including overhead with both upper extremities; and she could tolerate frequent exposure to extreme heat, cold, wetness, humidity, pulmonary irritants and hazards, such as moving machinery or unprotected heights. The ALJ did not include any restrictions due to mental impairments. The ALJ concluded at step four that Claimant could perform her past relevant work as a real estate sales agent, leading to a finding that she is not disabled under the Social Security Act.

# DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

Claimant argues that the ALJ's decision was in error because: (1) the credibility determination was flawed; (2) she improperly assessed Plaintiff's RFC; and (3) she failed to develop the record properly by not ordering a consultative medical examination. Selimos further argues that the Appeals Council erred by rejecting new and material evidence.

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431,

13

435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p.

> The ALJ's credibility assessment stated:
>
> [M]y review of the medical records indicates that the claimant's symptoms and complaints are not supported by the objective findings consistent with a finding of total disability prior to the date last insured. While I considered the claimant's testimony as well as her husband's testimony, without medical evidence, it is not enough to support a finding of total disability.
>
> * * *
>
> I find her allegations of total disability prior to her date last insured, December 31, 2009, less than credible. . . . I do not find the claimant's testimony regarding the severity or frequency of her symptoms to be fully credible or supportive of any greater limitations or restrictions than those I have included in the residual functional capacity set forth in this decision.

(R. 24, 27.)

First, the ALJ's credibility determination is based entirely on the lack of diagnostic evidence, but a claimant's statements about the intensity or persistence

14

of symptoms cannot be disregarded solely because they are not substantiated by objective medical evidence. *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012); SSR 96-7p(4);[3] *see Hall v. Colvin*, 778 F.3d 688, 689 (7th Cir. 2015) ("[A]n administrative law judge may not deny benefits on the sole ground that there is no diagnostic evidence of pain but only the applicant's or some other witness's say so."). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5. The ALJ in this case did not evaluate Selimos's credibility in light of these factors.

Second, the "assessment" does not include much more analysis than the boilerplate credibility template that has been roundly criticized by the Seventh Circuit.[4] That court has noted that although "the assessment of claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms," the template

---

[3] Interpretive rules, such as Social Security Rulings ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

[4] The ALJ's opinion also explicitly included the boilerplate language, but the use of the template is not by itself fatal to a credibility assessment.

15

"implies that the ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson*, 671 F.3d at 645. To the extent that the ALJ did try to provide reasons for the conclusion, those reasons were not based on substantial evidence. The ALJ found it persuasive that "none of the medical professionals who examined the claimant indicated that she was unable to walk or prescribed more than orthotic inserts for the claimant to wear in her shoes after her initial recovery period [from] the procedure" and that she had a normal range of motion in her ankles and a solid fusion at the surgical site (R. 26-27.) But Plaintiff does not content that she *cannot* walk; she alleges that pain prevents her from walking for six hours in an eight-hour workday, which is required at the light exertional level. *See* SSR 83-10. Furthermore, none of the medical evidence the ALJ discussed is inconsistent Plaintiff's claims of disabling pain. Her right foot, not her ankles, is the alleged cause of Plaintiff's pain. The fact that further medical intervention was not suggested only establishes that surgical treatment is not indicated; it does not conclusively demonstrate that she can work at the light level. There is evidence in the record suggesting that Plaintiff continued to suffer from pain after her surgeries; the pain was not fully alleviated with injections, physical therapy, or orthotics; and the plantar fasciitis could be worsened with walking and standing. The ALJ's failure to consider this evidence in the credibility assessment was in error.

Based on its conclusion that remand is necessary on the issue of credibility alone, the Court need not explore in detail the remaining errors claimed by

Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, she should consider not only Plaintiff's physical RFC but more fully analyze any mental limitations Selimos may have had as of her date last insured.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff Bernice Selimos's motion for summary judgment [Doc. No. 14] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                                  **ENTERED:**

*[signature: Maria Valdez]*

**DATE:   February 17, 2015**              _____
                                             **HON. MARIA VALDEZ**
                                             **United States Magistrate Judge**

---

[5] Contrary to Plaintiff's argument, however the Court will not require the Commissioner to order a consultative mental examination unless she deems it necessary. Although such an examination may be ordered "when the evidence as a whole is insufficient to support a determination or decision" on the claim, 20 C.F.R. § 416.919a(b), courts are generally deferential to an ALJ's decision whether the record is sufficiently developed. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather even when the claimant lacks representation.").

Moreover, the Court disagrees with Plaintiff that the Commissioner's argument pointing to a lack of evidence of depression violates the *Chenery* doctrine. *See SEC v. Chenery Corp.* 318 U.S. 80, 93-95 (1943). The Commissioner's argument did not provide a new rationale for the ALJ's decision but instead was an effort to counter Plaintiff's claim that the record was "replete with evidence of depression before the date last insured." (Pl.'s Mem. at 10.) The Commissioner is allowed to argue that a claim made by a claimant is inaccurate without violating *Chenery*.